UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALEX M. OMAR, )
)
Plaintiff, )
)
v. )   Civil Action No.
)   08-40044-FDS
WASHINGTON MUTUAL BANK, )
)
Defendant. )
)

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

SAYLOR, J.

This is a civil action arising out of alleged violations of the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f ("TILA") and its implementing regulation, Federal Reserve Board Regulation Z, 12 C.F.R. § 226. Plaintiff Alex M. Omar obtained two home mortgage loans from Washington Mutual Bank in September 2006. At the time, Washington Mutual provided him with a notice advising him of his right to cancel the transaction within a three-day cooling-off period, as required by TILA. The notice form, however, had blank spaces in two places where a date was supposed to have been filled in. Nearly seventeen months later, Omar sought to rescind the transaction, contending that the rescission period had not expired due to the defect in the notice. The lender refused, and Omar filed this lawsuit.

Defendant Washington Mutual has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be granted.

I.  **Background**

The Court accepts as true all well-pleaded facts in the complaint.

On September 20, 2006, Alex Omar obtained two loans from Washington Mutual for the purpose of debt consolidation. The loans were secured by mortgages on his residence.

In connection with the loan transaction, Washington Mutual provided plaintiff form Notices of Right to Cancel dated September 20, 2006. The form provided as follows:

> You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:
> (1) The date of the transaction, which is _____ [sic]; or
> (2) The date you received your Truth in Lending disclosures; or
> (3) The date you received this notice of your right to cancel.

(Compl. at Ex. A.)[1]

In addition, the form contained a space where a possible alternate expiration date for the rescission period could be filled in: "If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ [sic] (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.)" (Id.).

On February 15, 2008, nearly seventeen months later, plaintiff sought to exercise the right to rescind the loan for violations of TILA and the state statutory equivalent, the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws Ch. 140D, §§ 1-34, and 209 C.M.R. 32.00-32.34. Washington Mutual refused to permit rescission.

---

[1] "The Notice itself is annexed to the [] complaint and, therefore, is deemed fair game on a motion to dismiss." *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006); *see also Carye v. Long Beach Mortgage Co.*, 470 F. Supp. 2d 3, 9 n.4 (D. Mass. 2007) ("Consideration of the Notices is appropriate in the context of this motion to dismiss. When documents are central to a plaintiff's claims, the documents can be considered at the pleading stage.").

2

On March 11, 2008, plaintiff filed this action. The complaint seeks a declaration that he is entitled to rescission of the loan, statutory damages, attorney's fees, and litigation expenses and costs.

## II. Subject Matter Jurisdiction

Although TILA is a federal statute, there is some doubt as to whether there is a federal right to sue for rescission in this case, and therefore whether there is subject matter jurisdiction over this claim. This is because TILA and its implementing regulations exempt credit transactions subject to Massachusetts law from the provisions relating to the right to rescind. *See Belini v. Washington Mutual Bank*, 412 F.3d 17, 19 (1st Cir. 2005) (citing 12 C.F.R. § 226.29; 12 C.F.R. Pt. 226, Supp. I ("Credit transactions subject to the Massachusetts Truth in Lending Act are exempt from chapters 2 and 4 of the Federal Act.")). Whether such a federal right to sue exists has been addressed, but left open, by the First Circuit. *See Belini*, 412 F.3d at 19 ("[I]t is much murkier, given the current drafting of these regulations, whether a debtor's right to sue for rescission under federal law is preserved. Similarly, the question of how to measure the amount in controversy in an action for rescission is difficult.").[2]

However, as in *Belini*, this Court need not resolve the issue, as plaintiff has asserted both a claim based on a right to rescind and a claim for damages under 15 U.S.C. § 1640 for failure to

---

[2] "[W]e emphasize that the question of whether the exemption vitiates the possibility of bringing a federal claim to enforce the right of rescission raises very difficult issues of regulatory and statutory construction; the Federal Reserve regulations lack clarity on this point. Further, this question is unlikely to be litigated often, given that there are only five states that have exemptions from parts of TILA, *see* 12 C.F.R. Pt. 226, Supp. I, and that even in these exempt states, an alternative ground for federal jurisdiction will usually exist because of the clear preservation of damages claims under section 1640." *Belini*, 412 F.3d at 29; *see also Palmer*, 465 F.3d at 27 n.4.

honor plaintiff's exercise of that right. *See Belini*, 412 F.3d at 19-20.[3] "It is well established that debtors retain at least the ability to file federal suits for damages in federal court under 15 U.S.C. § 1640, regardless of the exemption." *Id.* Subject matter jurisdiction therefore exists in this case. *See Carye*, 470 F. Supp. 2d at 6 (citing § 1640 as the court's basis of subject matter jurisdiction on a similar claim).

III. Analysis

 A. Standard of Review

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations, citations and original textual alterations omitted).

---

[3] As in *Belini*, plaintiff here seeks statutory damages under 15 U.S.C. § 1640 by way of § 1635(g). Section 1635(g) provides that "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under [15 U.S.C. § 1640] for violations of this title not relating to the right to rescind." 15 U.S.C. § 1635(g). Section 1640, in turn, allows damages actions against "any creditor who fails to comply with any requirement imposed under this chapter, including any requirement under [15 U.S.C. § 1635]." 15 U.S.C. § 1640(a).

B.    <u>The Truth In Lending Act</u>

TILA requires creditors "to disclose clearly and accurately all the material terms of a credit transaction." *Palmer*, 465 F.3d at 27 (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)). It provides further protection to consumers by guaranteeing them a three-day cooling-off period within which they may, "for any reason or for no reason," rescind certain types of transactions. *McKenna v. First Horizon Home Loan Corp.* ("*McKenna I*"), 475 F.3d 418, 421 (1st Cir. 2007). "This three-day rescission period begins to run when the transaction is consummated or upon delivery of notice of the consumer's right to rescind, whichever occurs later." *Santos-Rodriguez v. Doral Mortgage Corp.*, 485 F.3d 12, 14 (1st Cir. 2007).[4] The three-day rescission period may be extended for up to three years if the lender fails to live up to its obligations under TILA, including any failure to give notice of the right to rescind. *See Palmer*, 465 F.3d at 27; *McKenna I*, 475 F.3d at 421.

In addition to the statute, the Board of Governors of the Federal Reserve System has issued a regulation known as Regulation Z that governs, among other things, the disclosures that lenders must make to consumers. 12 C.F.R. § 226.1 *et seq.* Regulation Z includes an appendix of model forms for various transactions, including a model form of notice of the right to rescission. *Santos-Rodriguez*, 485 F.3d at 14.

The parties appear to agree that the lender used the model Notice of Right to Cancel as set forth in the appendix to Regulation Z. *Compare* Compl. at Ex. A *with* 12 C.F.R. Part 226, App. H, Form H-8. The notice, however, omitted the date of transaction and the alternate rescission

---

[4] "Rescission essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests." *McKenna I*, 475 F.3d at 421 (citations to the statute omitted).

deadline. The issue presented is whether TILA permits plaintiffs to rescind in light of the defects in the notice.

Regulation Z specifies as follows: "The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following: . . . (v) The date the rescission period expires." 12 C.F.R. § 226.23.[5] Thus, whether a disclosure complies with TILA depends on whether it "clearly and conspicuously" discloses the relevant date. *See Carye*, 470 F. Supp. 2d at 9.[6] In making that determination, "courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer—a consumer who is neither particularly sophisticated nor particularly dense." *Palmer*, 465 F.3d at 28. Thus, "the question [is] whether the average consumer, looking at the Notice objectively, would find it confusing." *Palmer*, 465 F.3d at 28. Any subjective, or actual, confusion by the consumer is immaterial. *See id.*, 465 F.3d at 28 (explaining that in TILA actions courts focus "the lens of our inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings").

TILA does not impose strict liability for technical defects in disclosures. "Most courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice." *Santos-Rodriguez*, 485 F.3d at 17 (citing cases); *see also*

---

[5] Despite state law requirements governing the right of rescission in such transactions, the key question here will be resolved by reference to the federal provisions. Both parties agree that the analysis under the MCCCDA would be identical. *See* Def. Mem. at 2 n.1; Pl. Mem. at 1-2; *see also McKenna I*, 475 F.3d at 422 ("Thus, even though the parties agree that the rescission claims in this case invoke the MCCCDA, they also agree that, given the congruence between the two statutes, the TILA supplies the applicable rules of decision.").

[6] This issue presents a question of law, appropriate for determination on a motion to dismiss. *See, e.g., Gambardella v. G. Fox & Co.*, 716 F.2d 104, 113 (2d Cir. 1983) ("[Where] the sole issue is whether required disclosures have been made clearly and conspicuously, or whether additional disclosures confuse or mislead, the court may appropriately decide the plaintiff's claims as raising issues of law.").

*McKenna v. First Horizon Home Loan Corp.* ("*McKenna II*"), 537 F. Supp. 2d 284, 290 (D. Mass. 2008) (concluding "that the Notice, while not perfect, clearly and conspicuously disclosed to Plaintiffs the effects of the rescission").[7] As the *Santos-Rodriguez* court observed, "[W]e do not require perfect disclosure. The question before us is not whether the notification in Form H-9 would have been more complete than the notification plaintiffs actually received, but only whether the notification plaintiffs actually received met the requirements of the clear and conspicuous standard laid out in Regulation Z." 485 F.3d at 18.[8]

This Court concludes that, as a matter of law, a hypothetical average consumer would be aware when the rescission period expired, and that therefore the notice "clearly and conspicuously" disclosed that information. The disclosure was not, of course, perfect, and could have been more clear and more conspicuous. Nonetheless, an average borrower in the position of the borrower here—even when provided with a so-called "blank" form—could have easily ascertained the rescission period. *See Carye*, 470 F. Supp. 2d at 9 (holding that where the lender used the "standard" Notice of Right to Cancel form but omitted the date of transaction and the

---

[7] The case law is not uniform in that regard. *See Santos-Rodriguez*, 485 F.3d at 17 n.6 ("We do not follow the Seventh Circuit's view that 'TILA does not easily forgive "technical" errors.'") (rejecting *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006)); *see also McKenna II*, 537 F. Supp. 2d 284, 290 (D. Mass. 2008) ("Plaintiffs point to caselaw in other circuits taking a stricter, zero-tolerance approach when determining whether notice meets the TILA standard.... Reliance on [these cases] is misplaced because the First Circuit recently declined to follow the hyper--technical approach of these circuits."). Cases within the Circuit to the contrary appear to antedate the recent First Circuit developments. *See, e.g., New Me. Nat'l Bank v. Gendron*, 780 F. Supp. 52, 57 (D. Me. 1991) ("Courts have imposed a standard of strict liability under the TILA where a lender has violated any of its provisions.").

[8] The First Circuit has noted that this approach is consistent with the legislative history of TILA and its amendments. *See McKenna I*, 475 F.3d at 424, 425 ("Congress [amended] TILA to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations. In taking this step, Congress made manifest that although it had designed the TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations."). *See also Santos-Rodriguez*, 485 F.3d at 17 & 17 n.6 (citing *McKenna I*).

alternate rescission expiration date on the form, the notice was nonetheless not confusing to the average person).

The form explains the method of calculating the rescission period: the borrower has three days from the latest of three triggering events in which to rescind. The first is the date the transaction occurred; the second is the date that the borrower receives her TILA disclosures; and the third is the date the borrower actually receives the notice. The form provides a space for—and the lender failed to include—the first item (the date of the transaction) on the form.

The form does not, however, require the lender to include the date of receipt of the TILA disclosures or the date of receipt of the notice. Presumably, that is because the borrower, not the lender, is in the best position to ascertain the date he or she received the requisite documents. In other words, the form assumes that certain critical dates are known to the borrower.[9] The Court sees no reason why an average borrower could not also supply the date of the transaction. An average borrower would either be actually aware of the date of the transaction (because the borrower was physically present at the closing) or could easily ascertain the date (for example, by looking at the loan documents).

Nor is the omission of the date on the form particularly confusing. An average borrower, looking at the form, would not need to apply accounting concepts, or even perform a mathematical calculation; the borrower would simply have to supply a missing date. Furthermore, the borrower is not being asked to recall a long-ago date from the recesses of his or

---

[9] Use of the Federal Reserve's model form is *prima facie* evidence of compliance with TILA. *Palmer*, 465 F.3d at 29 (noting that there is at least "prima facie evidence of the adequacy of the disclosure" where "language of the Notice closely tracks the language of the model form") (citing 12 C.F.R. § 226 Supp. I, Intro. para. 1 ("Good faith compliance with [the Federal Reserve's] commentary affords protection from liability under [the TILA].")).

her memory; at most, the transaction would have occurred only a few days earlier.

The Court further notes that the date of the transaction is almost always going to be irrelevant in determining the rescission period. In the great majority of cases, all three events are going to occur at the same time; the borrower will appear at the closing and be handed a stack of documents including the TILA disclosures and the notice. In some instances, the borrower will receive the disclosures and the notice later than the transaction (for example, if the disclosure and the notice are mailed to the borrower after the closing). While it is at least conceivable that the three events could occur in any order, and therefore that the "date of the transaction" would occur last, it is highly unlikely.

For similar reasons, omission of the alternate rescission deadline would not be confusing to an average borrower, whether considered alone or in conjunction with the other omission. *See Megitt v. Indymac Bank, F.S.B.*, 547 F. Supp. 2d 56, 61 (D. Mass. 2008) ("Defendant's omission of the rescission deadlines from Plaintiffs' loan transactions (indeed the only flaw Plaintiffs cite) were, at most, unactionable technical violations."). Under the alternative deadline, the borrower is given the option (if he or she elects to give notice of rescission by mail or telegram) of sending the notice by (1) a specific date filled in on the form or (2) midnight on the third business day from the latest of the three events discussed above. It appears that it is up to the lender to specify a separate, alternative deadline; in any event, if the form is left blank, the subsequent parenthetical provides a simple formula for calculating the alternative date. Indeed, this is why the First Circuit, evaluating the significance of the alternate rescission deadline in its "contextual moorings," concluded that a form containing an alternate rescission deadline *that had already past* when the Notice was provided to the borrower was *not* objectively confusing. "The

statement [containing the alternate rescission deadline] is followed immediately by a parenthetical reading '(or midnight of the third business day following the latest of the three (3) events listed above).' We fail to see how any reasonably alert person—that is, the average consumer—reading the Notice would be drawn to the [] deadline without also grasping the twice-repeated alternative deadlines." *Palmer*, 465 F.3d at 29. If including an already expired deadline is not objectively confusing, omitting the alternative deadline altogether should not alter the analysis.

This reasoning is also consistent with the recent decision in *Reynolds v. E-Loan, Inc.*, 2008 U.S. Dist. LEXIS 94844 (D. Mass. Nov. 14, 2008), though the result in that case may at first blush appear contradictory. *Reynolds* also involved a "blank" notice form. The court there found that the rescission notices containing "blank spaces where the opening date and the rescission expiration date should have been inserted" did not provide sufficient notice of rescission rights to satisfy TILA. 2008 U.S. Dist. LEXIS 94844, at *8. However, the language used in the notices in *Reynolds* was different than that used here:

> [The notices] failed to include a specific date for the first enumerated event: "the opening date of [the] account." I construe this to refer to the date the consumer's loan is actually funded. This is not a date for which the average consumer could be expected to have independent knowledge. The consumer might not be present when an account is first opened, and he or she may not be notified until several days later that funds have been made available. . . . The Reynolds were thus missing a critical factor to the equation, because they could not reasonably be expected to count forward three business days from an unknown starting point.

2008 U.S. Dist. LEXIS 94844, at *20. This small factual variation drove the court's analysis. Thus, the court felt compelled to "note that a different result may be appropriate where the first enumerated event in a disclosure notice is 'the date of the transaction,' . . . an event for which the

consumer will necessarily be present, either in person or through a designated agent. In this respect, the 'transaction date' is analogous to the date of the consumer's receipt of the TILA disclosures or of the Notice of Right to Cancel. For each of those events, the average consumer will either have personal knowledge of the correct date or could easily discover it." 2008 U.S. Dist. LEXIS 94844, at *21-*22.

Finally, the result here comports with logic and common sense, as well as the goals of TILA. *See Palmer*, 465 F.3d at 29 ("If more were needed—and we doubt that it is—we note that accepting the plaintiff's argument might contravene the goals of the TILA."). It is absurd to suggest that minor defects in the notice justify application of the extreme remedy of rescission. Moreover, requiring rescission on these facts would create perverse incentives. It would encourage borrowers to sit on their rights for years, in effect giving them an option out of their loan obligations at any point up to the expiration of the statute of limitations. Congress did not intend such a result, and the Court sees no reason to permit it here.

A "complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1965). The Court concludes that the notice clearly and conspicuously provided the date by which the borrower could rescind the loan, and that the omission of the dates in the notice would not confuse an average borrower. Plaintiff therefore has not alleged a plausible entitlement to relief, and the complaint will be dismissed.

IV. <u>Conclusion</u>

For the foregoing reasons, the motion of defendant Washington Mutual Bank to dismiss for failure to state a claim upon which relief can be granted is GRANTED.

So Ordered.

                                            /s/ F. Dennis Saylor IV
                                            F. Dennis Saylor IV
                                            United States District Judge

Dated: December 30, 2008